IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION AT CLEVELAND

| | |
|---|---|
| Michelle Whalen, | |
| *On behalf of herself and those similarly situated*, | Case No. 1:17-cv-2092 |
| Plaintiff, | Judge |
| v. | Magistrate Judge |
| Degroff Industries, Inc., Lavender Farms, LLC, Ronald Larson and Kim Larson, | Jury Demand Endorsed Hereon |
| Defendants. | |

CLASS AND COLLECTIVE ACTION COMPLAINT

### Preliminary Statement

1.      Michelle Whalen, on behalf of herself and all similarly-situated employees, brings this action against Defendants Degroff Industries, Inc., Lavender Farms, LLC, Ronald Larson and Kim Larson (collectively "Defendants"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly-situated employees with minimum wages as required by the Fair Labor Standards Act ("FLSA"), the Ohio Constitution, Article II, Section 34a ("Section 34a"), O.R.C. § 4113.15 (Ohio's "Prompt Pay Act"), and O.R.C. § 2307.60.

### Jurisdiction and Venue

2.      This Court has jurisdiction over Plaintiff's FLSA claims under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

3.     This Court has supplemental jurisdiction over Plaintiff's Ohio law claims under 28 U.S.C. § 1367.

4.     Venue in this Court is proper under 28 U.S.C. § 1391(b) because the parties reside in this district, and a substantial part of the events giving rise to the claim herein occurred in this district.

## Parties

### Plaintiff

### Michelle Whalen

5.     Plaintiff Michelle Whalen resides in the Northern District of Ohio. Further, at all times relevant herein, Plaintiff worked within the boundaries of Northern District of Ohio.

6.     From approximately 2012 until September 2017, Plaintiff worked as a server for Defendants at Strip Steakhouse.

7.     At all relevant times, Plaintiff was an "employee" of Defendants as defined in the FLSA and Section 34a.

8.     Plaintiff has given written consent to bring this action to collect unpaid wages, a copy of which is attached to this Complaint.

### Defendants

### Degroff Industries, Inc.

9.     Defendant Degroff Industries, Inc. ("Degroff") is a for-profit corporation registered to do business in Ohio.

10.     Degroff's principal place of business is 36840 Detroit Rd., Avon, Ohio, 44011, the location of Strip Steakhouse.

11.     According to the Ohio Secretary of State, Degroff has done business as "Strip A Steakhouse."

12.     Degroff is owned by Ronald and Kim Larson.

13.     Degroff has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

14.     Degroff has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

15.     At all relevant times, Degroff maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, deductions, and other practices.

16.     Degroff is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA, Section 34a, and § 4113.15.

17.     At all relevant times, Degroff was and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

18.     Degroff's gross revenue exceeds $500,000 per year during the time period relevant to this Complaint.

**Lavender Farms, LLC**

19.     Defendant Lavender Farms, LLC ("Lavender Farms") is a limited liability company registered to do business in Ohio.

20.     Lavender Farms does business as "Strip A Steakhouse."

21.     Lavender Farms' principal place of business is 36840 Detroit Rd., Avon, Ohio, 44011.

3

22.     Lavender Farms has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

23.     Lavender Farms has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

24.     At all relevant times, Lavender Farms maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, deductions, and other practices.

25.     Lavender Farms is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA, Section 34a, and § 4113.15.

26.     At all relevant times, Lavender Farms was and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

27.     Lavender Farms' gross revenue exceeds $500,000 per year.

**Ronald Larson**

28.     Defendant Ronald Larson is an individual and is sued in his individual capacity. Upon information and belief, he lives in the Northern District of Ohio.

29.     At all relevant times, Ronald Larson has been an owner and officer of Degroff and Lavender Farms.

30.     The Strip Steakhouse website and logo reads: "Strip by Ron Larson".

31.     At all relevant times, Ronald Larson financially benefitted from the illegal pay practices alleged herein.

32.     At all relevant times, Ronald Larson has had financial control over Strip Steakhouse, Degroff and Lavender Farms.

33.     At all relevant times, Ronald Larson has had control over the day to day operations of Strip Steakhouse, Degroff, and Lavender Farms, or significant aspects thereof.

34.     At all relevant times, Ronald Larson was an "employer" of Plaintiff and similarly situated delivery employees as that term is defined by the FLSA, Section 34a, and § 4113.15.

35.     At all relevant times, Ronald Larson was actively involved in managing the operations of Strip Steakhouse, Degroff and Lavender Farms.

36.     At all relevant times, Ronald Larson had control over Defendants' pay policies and the unlawful policies and practices alleged herein.

37.     At all relevant times, Ronald Larson had power over personnel and payroll decisions at Strip Steakhouse, Degroff and Lavender Farms, including the power to hire and fire employees.

38.     At all relevant times, Ronald Larson had the power to stop any illegal pay practices that harmed Plaintiff and similarly situated employees.

**Kim Larson**

39.     Defendant Kim Larson is an individual and is sued in her individual capacity. Upon information and belief, she lives in the Northern District of Ohio.

40.     At all relevant times, Kim Larson has been an owner and officer of Degroff and Lavender Farms.

41.     At all relevant times, Kim Larson financially benefitted from the illegal pay practices alleged herein.

5

42.     At all relevant times, Kim Larson has had financial control over Strip Steakhouse, Degroff and Lavender Farms.

43.     At all relevant times, Kim Larson has had control over the day to day operations of Strip Steakhouse, Degroff, and Lavender Farms, or significant aspects thereof.

44.     At all relevant times, Kim Larson was an "employer" of Plaintiff and similarly situated delivery employees as that term is defined by the FLSA, Section 34a, and § 4113.15.

45.     At all relevant times, Kim Larson was actively involved in managing the operations of Strip Steakhouse, Degroff and Lavender Farms.

46.     At all relevant times, Kim Larson had control over Defendants' pay policies and the unlawful policies and practices alleged herein.

47.     At all relevant times, Kim Larson had power over personnel and payroll decisions at Strip Steakhouse, Degroff and Lavender Farms, including the power to hire and fire employees.

48.     At all relevant times, Kim Larson had the power to stop any illegal pay practices that harmed Plaintiff and similarly situated employees.

## Facts

**Defendants' Business in General**

49.     Defendants principally own and operate Strip Steakhouse, which is a restaurant and bar located at the Shoppes of Olde Avon Village in Avon, Ohio.

50.     At any given time during the relevant time period, Defendants employed over 25 full and part-time wait staff, including servers, bussers and bartenders ("tipped employees"), to serve Defendants' customers.

51.     The tipped employees' primary job duty was to wait on and provide service to Defendants' customers.

52.     During the course of the tipped employees' work, they received tips from customers.

**Defendants' Pay Practices and Policies**

53.     During the relevant time period, Defendants applied the same pay practices and policies to all employees, including Plaintiff, with one exception – the "on call" time described below only applied to servers, including Plaintiff

54.     Defendants paid their employees less than either the federal or state non-tipped minimum wage.

55.     Defendants attempted to take a "tip credit" for a portion of the tipped employees' wages, including the wages of Plaintiff and similarly situated employees.

56.     However, Defendants did not provide notice to Plaintiff and similarly situated employees of the tip credit provisions contained in 29 U.S.C. § 203(m), nor did they actually pay Plaintiff and similarly situated employees the minimum tipped wage.

57.     At all relevant times, Defendants have claimed the maximum tip credit allowable under Ohio law:

   a.  In 2012, Defendants paid tipped employees $3.85 per hour.

   b.  In 2013, Defendants paid tipped employees $3.85 per hour.

   c.  In 2014, Defendants paid tipped employees $3.98 per hour.

   d.  In 2015, Defendants paid tipped employees $4.05 per hour.

   e.  In 2016, Defendants paid tipped employees $4.05 per hour.

7

f.   In 2017, Defendants paid tipped employees $4.08 per hour.

58.    Throughout Plaintiff's employment, Defendants took a deduction from the biweekly paycheck of Plaintiff and similarly situated employees for "Med Pre Tax."

59.    Plaintiff, nor any of her similarly situated co-workers, received health insurance from Defendants, nor did they benefit in any other way from this deduction from their wages.

60.    Defendants also regularly took another deduction from the biweekly paycheck of Plaintiff and similarly situated employees for "Misc (no goal)."

61.    Ron Larson informed Plaintiff that these deductions were used to pay for Defendants' operating expenses, including expenses related to plates and glassware.

62.    The deductions were used for Defendants' benefit.

63.    Because Defendants took unlawful deductions from the paychecks of Plaintiff and similarly situated employees, Defendants paid these employees less than the minimum allowable minimum wage or the minimum allowable wage minus a "tip credit." Consequently, Defendants lost their right to take a "tip credit."

64.    At all relevant times, Defendants required Plaintiff and similarly situated servers to be "on call" at least 1-3 times a month. "On call" duty typically lasted anywhere between fifteen minutes and three hours.

65.    While "on call," Plaintiff and similarly situated servers were required to stay at Strip Steakhouse and perform "side work" while waiting to see if the restaurant got busy. "Side work" included polishing glassware, flatware and buss racks, as well as cleaning the restaurant. If the restaurant did not get busy, the "on call" server was released from the schedule and sent home.

8

66.     While "on call," Plaintiff and similarly situated servers were not permitted to leave the premises.

67.     While "on call," Plaintiff and similarly situated servers were not assigned to serve any tables, were not permitted to serve any tables, and were not otherwise able to engage in any other tipped activity.

68.     Defendants paid Plaintiff and similarly situated servers at their tipped wage rate for all hours worked while "on call."

**Illustrations of Defendants' Unlawful Pay Practices**

69.     Plaintiff worked as a server for Defendants from approximately 2012 to September 2017.

70.     Plaintiff's job duties included serving customers and completing side work at Strip Steakhouse.

71.     Throughout her employment, Plaintiff was paid minimum wage minus the maximum allowable tip credit for all hours for which she received compensation. She was paid $3.85 per hour in 2012 and 2013, $3.98 per hour in 2014, $4.05 per hour in 2015 and 2016, and $4.08 per hour in 2017.

72.     Defendants never provided Plaintiff with notice of the tip credit requirements of the FLSA.

73.     Throughout her employment, Defendants took deductions from Plaintiff's paychecks that were characterized as either "Misc (no goal)" or "Med Pre Tax."

74.     These deductions were used to pay for Defendants' operating expenses, including silverware and dishes.

9

75.     At least 1 to 3 times per month, Plaintiff was required to arrive at work for an "on call" shift, during which she would be paid a tipped wage rate, but was not engaged in any tipped activity.

76.     Specifically, Plaintiff was required to complete side work while on call, was not permitted to leave the premises, and was not permitted to serve any tables. Depending on how busy the restaurant was, Plaintiff would either be sent home after some period of time—between 15 minutes and 3 hours—or would be permitted to start serving tables.

77.     During these "on call" times, Plaintiff was paid a tipped wage rate but was not working in a tipped capacity.

### Collective Action Allegations

78.     Plaintiff brings this collective action on behalf of herself and all others similarly situated for the following two subclasses of employees:

**Collective Action Subclass 1:** All tipped employees or other employees paid at or below Ohio minimum wage who worked for Defendant Strip Steakhouse from October 5, 2014 to present (the "Collective Period") and who had a deduction taken from their paycheck that brought their wage rate below minimum wage.

**Collective Action Subclass 2:** All tipped employees who worked for Defendant Strip Steakhouse during the Collective Period and who were not paid at least minimum wage for all hours worked while "on call" and/or while performing non-tipped work (collectively with Collective Action Subclass 1, the "FLSA Collective").

79.     Plaintiff and the members of the two collective action subclasses performed the same or similar job duties as one another in that they performed serving, bussing, or bartending duties for Defendants.

80.     Plaintiff and the members of the two collective action subclasses were subject to the same uniform illegal pay practices and policies.

10

81.    Defendants' illegal pay practices and policies related to Plaintiff and the members of the two collective action subclasses include:

   a.   Failing to provide proper notice of the tip credit provisions of the FLSA;

   b.   failing to pay at least tipped minimum wage for each hour of tipped worked;

   c.   failing to pay at least regular minimum wage for each hour of non-tipped worked; and

   d.   applying deductions for the benefit of Defendants to the workers' biweekly paychecks.

82.    The members of the two collective action subclasses are owed minimum wages for the same reasons as Plaintiff.

83.    Application of Defendants' illegal pay practices does/did not depend on the personal circumstances of Plaintiff or those joining this lawsuit. Rather, the same policy or practice which resulted in the non-payment of minimum wages applies to members of the two collective action subclasses.

84.     Defendants knowingly, willfully, or with reckless disregard carried out their illegal pattern or practice of failing to pay minimum wage compensation with respect to Plaintiff and the members of the two collective action subclasses.

85.    Defendants did not act in good faith or reliance upon any of the following in formulating its pay practices: (a) case law, (b) the FLSA, (c) Department of Labor Wage & Hour Opinion letters or (d) the Code of Federal Regulations.

86.    Defendants have acted willfully in failing to pay Plaintiff and the class members in accordance with the law.

## Class Action Allegations

87.     Plaintiff sues on her own behalf and on behalf of a class of persons under Federal

Rule of Civil Procedure 23 for the following two subclasses of employees:

**Class Action Subclass 1:** All tipped employees or other employees paid at or below Ohio minimum wage who worked for Strip Steakhouse from October 5, 2014 to present (the "Collective Period") and who had a deduction taken from their paycheck that brought their wage rate below minimum wage.

**Class Action Subclass 2:** All tipped employees who worked for Strip Steakhouse during the Collective Period and who were not paid at least minimum wage for all hours worked while "on call" and/or while performing non-tipped work (collectively with Collective Action Subclass 1, the "FLSA Collective") (collectively with Class Action Subclass 1, the "Tipped Employee Class").

88.     Pursuant to the Ohio Constitution, Plaintiff brings her claims on behalf of all

persons that Defendants employed at any time from October 5, 2014, to the entry of judgment in

this case (the "Class Period").

89.     Plaintiff brings her claims on behalf of herself and the members of the two class

action subclasses that were not paid at least minimum wage for each hour worked.

90.     The members of each of the two class action subclasses are so numerous that

joinder of all members is impracticable. The precise number of such persons is unknown, and the

facts on which that number can be ascertained are presently within the sole control of

Defendants. Upon information and belief, there are over forty members of each of the two class

action subclasses during the Class Period.

91.     Plaintiff's claims are typical of the claims of the members of each of the two class

action subclasses, and a class action is superior to other available methods of fair and efficient

adjudication of the controversy – particularly in the context of wage and hour litigation where

individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

92.     Defendants have acted or refused to act on grounds generally applicable to each of the class action subclasses, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each of the subclasses as a whole.

93.     Plaintiff is committed to pursuing this action and has retained competent counsel experienced in wage and hour actions.

94.     Plaintiff has the same interests in this matter as all other members of each of the two class action subclasses and Plaintiff's claims are typical of each of the two class action subclasses.

95.     There are questions of law and fact common to the class action subclasses, which predominate over any questions solely affecting the individual member of the class action subclasses. These questions include but are not limited to:

    a.   Whether Defendants employed members of the class action subclasses within the meaning of Article II, Section 34(a) of the Ohio Constitution and O.R.C. § 4113.15;

    b.   Whether Defendants took deductions from the paychecks of Plaintiff and the members of the Subclass 1 for their own benefit;

    c.   Whether members of Subclass 2 were paid a tipped wage rate for non-tipped work during their "on call" shifts;

d.  Whether Defendants failed and/or refused to pay the members of the class action subclasses at least minimum wages for all hours Defendants suffered or permitted them to work;

e.  What the proper measure of damages is with respect to the class members' claims; and

f.  Whether Defendants instituted these unlawful policies and practices willfully.

**Claims for Relief**

**<u>Count 1</u>**
**Failure to Pay Minimum Wages - Fair Labor Standards Act**
**(On Behalf of Plaintiff and the FLSA Collective)**

96.  Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

97.  Plaintiff and the FLSA Collective are or were non-exempt, hourly employees who all completed substantially the same job duties for Defendants.

98.  Defendants impermissibly took a tip credit from the wages of Plaintiff and the FLSA Collective.

99.  Defendants did not provide Plaintiff and the FLSA Collective with notice of the tip credit rules as required by 29 U.S.C. § 203(m).

100.  Defendants paid Plaintiff and the FLSA Collective below minimum wage for the hours they worked by taking deductions from their paychecks for the benefit of Defendants.

101.  Defendants also paid Plaintiff and the FLSA Collective below minimum wage for the hours they worked by requiring them to work certain hours as "on call" hours, during which

14

Plaintiff and the FLSA Collective were paid tipped wage rates but were not engaged in any tipped work.

102.    By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

103.    Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

104.    As a result of Defendants' violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, improper deductions, liquidated damages, costs, and attorneys' fees.

**Count 2**
**Failure to Pay Minimum Wages - Ohio Constitution, Article II, § 34a**
**(On Behalf of Plaintiff and the Rule 23 Class)**

105.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

106.    Defendants paid Plaintiff and the Rule 23 Class below minimum wage for the hours they worked by taking improper deductions from their paychecks for Defendants' benefit.

107.    Defendants paid Plaintiff and the Rule 23 Class below minimum wage while performing non-tipped work and during "on call" shifts.

108.    Article II § 34a of the Ohio Constitution requires that employees be paid not less than minimum wage for all hours worked, with a maximum allowable tip credit being half of regular minimum wage.

109.    By not paying Plaintiff and the Rule 23 Class at least minimum wage for each hour worked, Defendants have violated the Ohio Constitution, Article II, § 34a.

15

110.    Defendants' violations with respect to Plaintiff are continuing violations, such that she can recover for Section 34a violations from the beginning of her employment to present. Other class members were also subjected to continuing violations that extended outside the three-year period prior to the filing of this complaint.

111.    As a result of Defendants' violations, Plaintiff and the Rule 23 Class are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, an additional two times unpaid wages/unreimbursed expenses in damages under Section 34a, costs, and attorneys' fees.

**Count 3**
**Untimely Payment of Wages – O.R.C. § 4113.15**
**(On Behalf of Plaintiff and the Rule 23 Class)**

112.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

113.    During all relevant times, Defendants were entities covered by O.R.C. § 4113.15, and Plaintiff and the Rule 23 Class were employees within the meaning of O.R.C. § 4113.15 and were not exempt from its protections.

114.    O.R.C. § 4113.15(A) requires that Defendants pay Plaintiff and the Rule 23 Class all wages on or before the first day of each month, for wages earned during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month, for wages earned during the last half of the preceding calendar month.

115.    Plaintiff and the Rule 23 Class's unpaid wages and unreimbursed expenses have remained unpaid for more than thirty (30) days beyond their regularly scheduled payday.

16

116.     In violating Ohio law, Defendants acted willfully, without a good faith basis and with reckless disregard to Ohio law.

117.     As a result of Defendants' willful violation, Plaintiff and the Rule 23 Class are entitled to unpaid wages and liquidated damages, as stated in O.R.C. § 4113.15.

**Count 4**
**Damages Pursuant to O.R.C. § 2307.60**
**(On Behalf of Plaintiff and the Rule 23 Class)**

118.     Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

119.     The Fair Labor Standards Act, 29 U.S.C. § 216(a), imposes criminal penalties for willful violations of the FLSA.

120.     By their acts and omissions described herein, Defendants have willfully violated the FLSA, and Plaintiff and the Rule 23 Class have been injured as a result.

121.     O.R.C. § 2307.60 permits anyone injured in person or property by a criminal act to recover damages in a civil action, including exemplary and punitive damages.

122.     As a result of Defendants' willful violations of the FLSA, Plaintiff and the Rule 23 Class are entitled to compensatory and punitive damages pursuant to O.R.C. § 2307.60.

**WHEREFORE**, Plaintiff Michelle Whalen prays for all of the following relief:

A.     Designation of this action as a collective action on behalf of the FLSA Collective and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the members of the FLSA Collective.

B.      Unpaid minimum wages, unlawful deductions, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations;

C.      Certification of this case as a class action on behalf of the class action members pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D.      Designation of Plaintiff as representative of the members of the Rule 23 Class and counsel of record as Class Counsel;

E.      A declaratory judgment that the practices complained of herein are unlawful under Section 34a and O.R.C. § 4113.15;

F.      An award of unpaid minimum wages, and unreimbursed expenses due under Section 34a;

G.      An award of damages under Section 34a calculated as an additional two times of back wages.

H.      Liquidated damages under O.R.C. § 4113.15.

I.      Compensatory and punitive damages under O.R.C. § 2307.60.

J.      An award of prejudgment and post-judgment interest.

K.      An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

L.      Such other legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

  /s/ Eric Kmetz
Andrew Kimble (0093172)
Andrew Biller (0081452)
Eric Kmetz (0092369)
Markovits, Stock & DeMarco, LLC
3825 Edwards Road, Suite 650

513-651-3700 (Phone)
513-665-0219 (Fax)
(*abiller@msdlegal.com*)
(*akimble@msdlegal.com*)
(*ekmetz@msdlegal.com*)

*Counsel for Plaintiff and the putative class*

## Jury Demand

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

_/s/ Eric Kmetz_____
Eric Kmetz