# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **MICHELLE WHALEN, on behalf of herself and those similarly situated,** | : |
| Plaintiff, | : Case No. 1:17-cv-02092 |
| v. | : Judge James S. Gwin |
| **DEGROFF INDUSTRIES, INC., et al.,** | : |
| Defendants. | : |

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO CONDITIONALLY CERTIFY AN FLSA COLLECTIVE ACTION AND TO AUTHORIZE NOTICE

Timothy S. Anderson (0071593)
James P. Smith (0073945)
Jeffrey J. Moyle (0084854)
LITTLER MENDELSON, P.C.
1100 Superior Avenue, 20th Floor
Cleveland, OH  44114
Telephone: 216.696.7600
Facsimile: 216.696.2038
tanderson@littler.com
jpsmith@littler.com
jmoyle@littler.com

Attorneys for Defendants
DEGROFF INDUSTRIES, INC., LAVENDAR FARMS, LLC, RONALD LARSON and KIM LARSON

I.  INTRODUCTION

Defendants Degroff Industries, Inc., Lavender Farms, LLC, Ronald Larson, and Kim Larson ("Defendants") oppose Plaintiff's Motion to Conditionally Certify an FLSA Collective Action and Authorize Notice (the "Motion"). Plaintiff's proposed collective consists of "[a]ll employees who worked for Defendant Strip Steakhouse from October 5, 2014 to the present who were paid minimum wage minus a tip credit and who had a deduction(s) taken from their paycheck in one or more workweeks for 'Med Pre Tax,' or 'Misc (no goal).'" (Motion, p. 1). However, Plaintiff has not shown that she or any member of that proposed collective was paid less than the federal minimum wage minus a tip credit. Indeed, Plaintiff's own declaration and pay records show that she was paid more than the FLSA's "tip credit" minimum wage of $2.13 an hour, regardless of whether a $5 deduction was taken from her bi-weekly paycheck. Thus, Plaintiff has not and cannot establish that there is a collective of employees who were subject to a unified policy that violated the FLSA, so her Motion should be denied.

Furthermore, for her Motion to be granted, Plaintiff must make a showing that she is similarly situated to all of the employees she purports to represent. However, the *only* piece of evidence Plaintiff has produced to show that she is similarly situated to these individuals is her own self-serving declaration. Plaintiff's declaration is not admissible evidence with respect to other potential collective members, and it may not be considered to satisfy her burden of showing that she is similarly situated to the individuals she seeks to represent. Because Plaintiff's sole evidence in support of her Motion cannot even be considered, Plaintiff failed to meet her evidentiary burden. Consequently, the Court should deny Plaintiff's motion, and this case should proceed on Plaintiff's individual claims only.

## II. FACTUAL BACKGROUND

Plaintiff worked as a server at Strip Steakhouse from approximately 2012 to September 2017. (*See* Declaration of Michelle Whalen ("Plaintiff Dec.") at ¶ 3, ECF No. 8-1). Throughout her employment, Plaintiff was paid the Ohio minimum wage minus a tip credit. (*Id.* ¶ 4-5). However, at no time does Plaintiff allege that she was paid less than the <u>federal</u> minimum wage minus the tip credit, which, since the beginning of Plaintiff's employment, was $2.13. 29 C.F.R. § 531.50(a)(1). Although she was paid the Ohio minimum wage minus a tip credit, Plaintiff's total compensation, including the credit card tips she received and cash tips she reported, was significantly higher. Indeed, according to the paychecks attached to her Motion, Plaintiff's average hourly gross pay was approximately $26.74 per hour in 2017, $26.22 per hour in 2016, $28.55 per hour in 2015, $26.45 per hour in 2014, $26.73 per hour in 2013, and $22.80 per hour in 2012. (*See* ECF No. 8-4, PageID#: 135-140).

According to Plaintiff, $5.00 was deducted from her bi-weekly paycheck for either "Med Pre Tax" or "Misc (no goal)." (Plaintiff Dec. ¶ 7). Plaintiff claims that "[t]he deduction is applied to the paychecks of all tipped employees," but does not offer any evidence establishing that she has first-hand knowledge of this fact. (*Id.* ¶ 8). Rather, Plaintiff apparently based this conclusion on inadmissible hearsay "conversations" she had with Shaunte Dunlap and Amber Mendez about the deduction, and the equally inadmissible comment that "[w]henever somebody drops a plate or a glass, usually one of the first comments that is made is a joke or reference to the deduction that is taken from everyone's paycheck."[1] (*Id.* ¶¶ 9-10).

---

[1] Notably, Plaintiff has not submitted a declaration from Shaunte Dunlap or Amber Mendez, nor have they opted-in to the collective action. Furthermore, Plaintiff does not identify any one specific conversation with either of these individuals, what exactly they said to her, when these conversations took place, or any other detail about these hearsay "conversations." Likewise, Plaintiff has not identified a single person who made a "joke" about the deduction, when such a joke was made, or any other detail about these purported jokes.

Finally, Plaintiff claims that she has "seen paychecks for other tipped employees, including servers, bussers, and bartenders, where the $5.00 deduction was applied." (*Id.* ¶¶ 11). Unsurprisingly, Plaintiff does not identify whose paycheck she looked at, how often she saw these paychecks, the date of any single specific paycheck she looked at, or any other details about the other employees' paychecks she purportedly saw.

Based solely on her self-serving declaration – and nothing else – Plaintiff is now asking this Court to conditionally certify a collective action under the FLSA, arguing that all employees in the collective all had $5.00 bi-weekly deduction(s) taken from their paycheck for "Med Pre Tax" or "Misc (no goal)" that caused their "effective hourly pay rate to drop below minimum wage." (Motion at p. 3).

## III. LAW AND ANALYSIS

### A. The FLSA Conditional Certification Standard.

A plaintiff can bring a collective action under the FLSA on behalf of herself and others who are "similarly situated." *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). Courts follow a two-stage certification process to determine whether a case can proceed as a collective action. *Cox v. Entm't U.S.A. of Cleveland, Inc.*, Case No. 1:13-cv-2656, 2014 U.S. Dist. LEXIS 121455, *2-3 (N.D. Ohio Aug. 29, 2014). In the first stage, the court must "determine whether to conditionally certify the collective class and whether notice of the lawsuit should be given to putative class members."[2] *Castillo v. Morales, Inc.*, 302 F.R.D. 480, 483 (S.D. Ohio 2014). Plaintiff bears the burden of showing that employees in the proposed collective are "similarly situated" to her. *Comer*, 454 F.3d at 546-47. A collective is "similarly situated" when collective members "suffer from a single FLSA-violating policy, and when proof

---

[2] At the second stage, which only occurs if a collective was conditionally certified, a defendant may file a motion to decertify the collective if discovery "reveals the individualized nature of the claims presented." *Cox*, 2014 U.S. Dist. LEXIS 121455 at *3.

3

of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567, 585 (6th Cir. 2009). "While the evidentiary threshold for demonstrating that similarly situated employees exist is not high, a plaintiff must demonstrate a factual nexus—that is, **something more than mere allegations**—to warrant conditional certification and the delivery of notice to potential class members." *Cox*, 2014 U.S. Dist. LEXIS 121455 at *3 (emphasis added) (quoting *O'Neal v. Emery Federal Credit Union*, Case No. 1:13-CV-22, 2013 U.S. Dist. LEXIS 110383 (S.D. Ohio Aug. 6, 2013)).

Consequently, for a collective to be conditionally certified, Plaintiff must make a "modest factual showing" that she is similarly situated to the other employees she is seeking to represent. *Comer*, 454 F.3d at 546. As this Court has previously held, "[w]hile the required level of proof is minimal and lenient, this Court will exercise some caution because the Sixth Circuit has held 'that a conditional order approving notice to prospective co-plaintiffs in a suit under § 216(b) is not appealable.'" *Jackson v. Papa John's USA, Inc.*, No. 1:08-CV-2791, 2008 U.S. Dist. LEXIS 107650, at *12 (N.D. Ohio Feb. 13, 2008) (quoting *Comer*, 454 F.3d at 549).

**B.    Plaintiff has Not Shown That the Collective Suffers From a Single FLSA-Violating Policy.**

Under the FLSA, employers are required to pay tipped employees, such as Plaintiff:

> (1) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996; and
>
> (2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 206(a)(1) of this title.

29 U.S.C. § 203(m). "In short, the tipped employee must receive the minimum wage provided by § 206(a)(1). The employer must pay *at least* $2.13 an hour, the minimum wage for tipped employees on August 20, 1996. But, only if the employee's tips average less than $5.12 an hour

4

will the employer have to supplement the tipped employee's wages to equal the minimum wage." *Osman v. Grube, Inc.*, No. 16-cv-802, 2017 U.S. Dist. LEXIS 105276, at *5 (N.D. Ohio July 7, 2017) (emphasis in original).[3]

According to Plaintiff's declaration, she was paid $3.98 per hour in 2014, $4.05 an hour in 2015 through 2016, and $4.08 per hour in 2017 – more than the federal minimum wage for tipped employees on August 20, 1996. (Plaintiff Dec. ¶ 7). Consequently, the only time during the last three years that it would even be possible for Plaintiff to be paid less than the minimum wage would be in workweeks where she performed less than 1.5 hours of work. To illustrate this, when Plaintiff was paid $3.98 per hour, she would have been paid $5.97 for 1.5 hours of work. The federal minimum wage for this work would have been $3.20 ($2.13 an hour multiplied by 1.5). Since the $5 deduction was taken bi-weekly, the deduction taken from Plaintiff's weekly wages was $2.50. Thus, her pay for 1.5 hours <u>after</u> the deduction would have been $3.47 ($5.97-$2.50) – well above the FLSA minimum wage for tipped employees of $3.20 for 1.5 hours of work.

Consequently, the only way the $5.00 deduction could possibly violate the FLSA minimum wage provision would be when Plaintiff performed less than 1.5 hours of work per week. Plaintiff has not produced any evidence – or even alleged – that she worked less than 1.5 hours in any given workweek. To the contrary, Plaintiff's paychecks show that she worked approximately 1,200-1,400 hours per year – an average of approximately 23-26 hours per week. (*See* ECF No. 8-4, PageID#: 135-140).

---

[3]Per the statutory terms of the FLSA, this $2.13 minimum wage amount is firm and does not fluctuate. Indeed, as the regulations point out, the statutory formula is: "minimum wage required by section 6(a)(1) of the Act minus $2.13" (*see* 29 CFR Section 531.59(a)). Thus, the payment of a higher hourly wage by an employer does not convert that higher wage into the minimum wage for tipped employees required by the FLSA.

Plaintiff has also produced no evidence that there are any other employees of Strip Steakhouse who worked less than 1.5 hours per week. Although Plaintiff's declaration alleges that the $5.00 deduction is taken from the paychecks of all tipped employees, there is nothing in her declaration establishing that the deduction caused any person – including herself – to be paid less than minimum wage. Indeed, Plaintiff has not alleged she has personal knowledge of how much other employees are paid, and how many hours they worked – each of which would be necessary to show that the deduction at issue caused an employee to be paid less than minimum wage. As a result, Plaintiff has not met her burden of establishing that she and the collective she seeks to certify are "similarly situated," in that they "suffer from a single FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567, 585 (6th Cir. 2009).

  **C.** **Plaintiff Failed to Satisfy Her Burden of Demonstrating That She is Similarly Situated to the Collective Members She Seeks to Represent.**

Plaintiff failed to meet her burden of making a "modest factual showing" that she is similarly situated to the collective members she seeks to represent. Indeed, Plaintiff's declaration—which is the ***only*** evidence she presented in favor of conditional certification—can only be described as self-serving at best. Accordingly, Plaintiff's Motion should be denied.

  **1.** **Plaintiff Has Not Made a "Modest Factual Showing" That She is Similarly Situated to All Other Proposed Collective Members.**

At the conditional certification stage of an FLSA collective action involving an allegation of a "unified policy," Plaintiff must show she is similarly situated to other employees by showing that "they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 765 (N.D. Ohio 2015). "Factors that guide the Court's consideration of conditional certification at this stage include: (1) whether potential plaintiffs

6

were identified; (2) whether affidavits of potential plaintiffs were submitted; and, (3) whether there is evidence of a 'widespread' discriminatory plan affecting those plaintiffs, which was maintained by defendants." *Id.*

Here, these factors can only lead to the conclusion that Plaintiff has not made the required modest factual showing. Plaintiff has only identified two other individuals who supposedly had deductions taken out of their paycheck. But neither of these individuals submitted a declaration, nor did any other potential plaintiffs. Rather, the only "evidence" that other employees had deductions taken from their paycheck is inadmissible hearsay. It is well established that "only admissible evidence may be considered in connection with a § 216(b) motion [for certification]." *Harrison v. McDonald's Corp.*, 411 F. Supp. 2d 862, 865 (S.D. Ohio 2005). Thus, this inadmissible hearsay evidence cannot be considered on a motion for conditional certification, which means that Plaintiff has not identified any other potential plaintiffs.

Moreover, as described above, Plaintiff has also not identified any evidence of a uniform unlawful policy affecting herself and potential collective members. In fact, the only evidence of any policy is Plaintiff's conclusory statement that "[t]he deduction is applied to the paychecks of all tipped employees and is used to pay for things such as broken plates and glassware." (Plaintiff Dec., ¶ 8). However, this statement is not admissible, because there is no evidence that supports a finding that Plaintiff has personal knowledge that Defendants take a deduction from the paychecks of all tipped employees. See Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter"). Furthermore, Plaintiff's claim that she saw the paychecks of other unidentified employees on unidentified occasions is also unsupported by any evidence that would suggest Plaintiff has personal knowledge of Defendants' alleged policy.

7

Accordingly, since the allegations in Plaintiff's declaration regarding other employees cannot be considered as part of Plaintiff's motion, Plaintiff has not established that she is similarly situated to the employees she seeks to represent and her motion must be denied. *See, e.g., O'Neal v. Emery Fed. Credit Union*, Case No. 1:13-CV-22, 2013 U.S. Dist. LEXIS 110383, *24 (S.D. Ohio Aug. 6, 2013) ("to warrant a finding that similarly situated employees exist, a plaintiff's declaration must at least allege facts sufficient to support an inference that she has actual knowledge about other employees' job duties, pay structures, hours worked, and whether they were paid for overtime hours"); *Dreyer v. Altchem Envtl. Servs.*, Case No. 06-2393, 2007 U.S. Dist. LEXIS 71048, *9-10 (D.N.J. Sept. 25, 2007) (rejecting affidavits and denying collective certification where affidavits submitted in support of collective certification read "[t]o the best of my information and belief, everyone I worked with was paid the same way and treated the same away [sic]"); *Landsberg v. Acton Enters.*, No. C2–05–500, 2006 WL 3742221, at *3 (S.D. Ohio Dec. 15, 2006) (denying collective certification and finding that evidence of various statements made by other employees regarding the defendant's pay policy were hearsay and are not to be considered in determining whether employees are similarly situated, especially because "Plaintiff had ample opportunity to obtain affidavits from additional Acton employees to support his claim that other managers were similarly situated, but failed to [do] so"); *Armstrong v. Weichert Realtors*, Case No. 05-3120, 2006 U.S. Dist. LEXIS 31351 (D.N.J. May 19, 2006) (denying collective certification where a named plaintiff submitted his own declaration "as the sole piece of evidence in support of the motion for class certification," and the declaration only contained "vague, general statements about 'all Loan Officers employed by [the defendant]'").

### 2. Plaintiff Has Not Demonstrated That Other Employees Have a Desire to Opt Into This Lawsuit.

Besides being unable to establish that she is similarly situated to the collective she purports to represent, Plaintiff's motion should be denied because she has not established that any other potential plaintiffs desire to become part of this case. Indeed, even though Plaintiff would have this Court believe that Defendants' pay practices are a long-running "joke" among employees of Strip Steakhouse, Plaintiff has not submitted a declaration from one other individual who may be interested in joining this case. On this basis alone, the Court should deny Plaintiff's motion. *Gentrup v. Renovo Servs., LLC*, Case No. 1:07cv430, 2008 U.S. Dist. LEXIS 121479, *5 (S.D. Ohio Jan. 24, 2008) (before certifying a collective and allowing notice to be sent, a court "must satisfy itself that there are other similarly situated employees of the employer who desire to opt in.") (citing *Dybach v. Florida Dep't of Corrections*, 942 F.2d 1562, 1567-68 (11th Cir. 1991)); *see also Frye v. Baptist Mem. Hosp., Inc.*, 2:07-CV-02708, 2008 U.S. Dist. LEXIS 107139, * 18 (W.D. Tenn. Sept. 16, 2008).

### D. Plaintiff's Proposed Notice Protocols are Objectionable.

Although Plaintiff has failed to provide evidence showing she is similarly situated to the collective she seeks to represent, Plaintiff has proposed a detailed plan and notice to notify potential opt-in plaintiffs of this action. (Motion at pp. 6-11). Defendants object to Plaintiff's proposed notice and procedures for distributing the same.

### 1. Defendants Object To The Content of Plaintiff's Proposed Notice.

Plaintiff's proposed notice (including the proposed email) is objectionable in several respects. First, the notice is addressed to "all current and former hourly employees who work or worked at Strip Steakhouse anytime from October 5, 2014," and the first paragraph of the notice refers to "hourly workers." (ECF No. 8-5). However, Plaintiff does not seek conditional

9

certification of a collective of "all hourly employees" of Strip Steakhouse. The notice should be addressed only to collective members, not all hourly employees.

The proposed notice is also objectionable because it is more marketing material than court-authorized notice. The phrase "unpaid wages," which is nothing but code that potential plaintiffs should opt-in because of the financial benefit of doing so, appears in the two-page proposed notice no less than seven times. To this end, Plaintiff has emphasized portions of the notice in an attempt to bolster her case and increase the opt-in rate, such as: (1) the phrase "this is a court-authorized notice. It is not a solicitation from a lawyer," which Plaintiff puts in bold type at the very beginning of the notice to give it a sense of legitimacy, especially considering that the statement that the Court does not express any opinion about the merits of the lawsuit does not appear until the very end of the notice; (2) Plaintiff's allegations are in bold type in a block quote in the middle of the first page, but Plaintiff's version of Steak Striphouse's response to Plaintiff's allegations (which is incomplete) is not; (3) under "Effect of Not Joining The Lawsuit" at the top of the second page of the proposed notice, Plaintiff writes "If the employees receive money or other benefits as a result of this lawsuit, you will NOT be eligible for those rewards," as if to signal to potential plaintiffs that they will miss out on "rewards" if they do not join the lawsuit; and (4) the phrase "You do not need to pay fees or expenses to Plaintiffs' attorneys for this representation" appears in bold type, which further suggests to potential plaintiffs that all they have to do is sit back and wait for the "rewards" to come rolling in.

In addition, the "retaliation" section on the bottom of the first page directs employees who claim to experience retaliation to "report it immediately to the Plaintiff's attorneys." This is nothing more than a solicitation. Plaintiff's attorneys have not shown why they should be given exclusive access to employees who believe they have been retaliated against, or why they should

10

be empowered to address allegations of retaliation by Strip Steakhouse employees. The retaliation paragraph also misleads potential collective members into believing that, if they join this lawsuit, they cannot be fired, have their pay docked, their hours changed, etc. for any reason, which is an inaccurate statement of the law. Instead, it is unlawful for Defendants "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." 29 U.S.C. § 215(a)(3).

Defendants also object because Plaintiff's proposed notice refers to an attached consent form, but there is no proposed consent form attached. Defendants should have the opportunity to review and, if necessary, object to Plaintiff's proposed consent form. Finally, Defendants object to the inclusion of Plaintiff's counsel's website in the notice. On Plaintiff's counsel's website, there is a page about this case, with a headline that reads "Server Files Suit Against Strip Steakhouse for Wage Theft."[4] This is a false statement, as there has been no allegation by Plaintiff that any Defendant has committed "theft" of wages. A court-authorized notice should not contain a reference to a web site that contains false and inflammatory marketing material which mischaracterizes Plaintiff's allegations.

It is well established that a Court may facilitate notice "so long as the court avoids communicating to absent class members any encouragement to join the suit or any approval of the suit on its merits." *Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 168-69 (1989). Plaintiff's proposed notice fails this test. Thus, if the Court grants the Motion, it should Order the parties to meet and confer about notice and consent protocol, and present any disagreements to the Court for determination. *See Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 773 (N.D.

---

[4] *See* http://www.msdlegal.com/2017/10/server-files-suit-strip-steakhouse-wage-theft/

Ohio 2015) (ordering the parties to meet and confer regarding the content of the notice and procedure for issuing the notice, and to submit any disputes to the court for resolution).

### 2. Plaintiff Should Not Be Permitted To Send The Notice By Four Different Methods.

Plaintiff proposes that notice in this case be disseminated by *four* different methods: mail, email, text message, and posting at Strip Steakhouse. However, courts generally approve only a *single* method for notification unless there is a reason to believe that method is ineffective. *Lutz v. Huntington Bancshares, Inc.*, Case No. 2:12-cv-01091, 2013 U.S. Dist. LEXIS 56477, *18 (S.D. Ohio Apr. 19, 2013) (citing *Wolfram v. PHH Corp.*, No. 1:12-cv-599, 2012 U.S. Dist. LEXIS 181073, *11 (S.D. Ohio Dec. 21, 2012)); *see also Fenley v. Wood Grp. Mustang, Inc.*, 170 F. Supp. 3d 1063, 1074-75 (S.D. Ohio 2016) ("the Court should be hesitant to authorize duplicative notice because it may unnecessarily 'stir up litigation' or improperly suggest the Court's endorsement of Plaintiff's claims"). Plaintiff has not shown good cause for why mail is insufficient to reach potential collective members, so this request should be denied. *See Fairfax v. Hogan Transp. Equip., Inc.*, No. 2:16-cv-680, 2017 U.S. Dist. LEXIS 160907, *23 (S.D. Ohio Sep. 29, 2017) (rejecting the plaintiff's request to send notice by mail and email); *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2017 U.S. Dist. LEXIS 129955, *18 (S.D. Ohio Aug. 14, 2017) (rejecting Plaintiff's counsel's request to send notice to potential collective members by text message, finding that the "proposed format for the text message—a message with a link to a URL containing the actual notice and Consent to Join form—is so cumbersome as to be invasive.").

Moreover, Defendants do not maintain the cellular phone numbers or personal email database of all employees. Hence, Notice cannot be disseminated to the entire collective by text message or email. Finally, sending unsolicited notice to potential collective members by text

message raises additional concerns, including any applicable laws that regulate the sending of unsolicited text messages, and the fact that some potential collective members may be charged a fee by his or her wireless carrier for receiving a text message. These concerns outweigh the minimal, if any, benefit of disseminating the notice by text message.

> **3. Defendants Should Not Be Required To Produce Email Addresses and Phone Numbers For Potential Collective Members.**

Because it is unnecessary for Plaintiff to send notice by email or text message, Defendants should not have to produce the phone numbers and email addresses for putative collective members. Courts routinely reject requests for this information absent a showing that a collective member's last known address "will be insufficient to provide reasonable notice to the class." *Wolfram*, 2012 U.S. Dist. LEXIS 181073, *12 (denying a request for telephone numbers). *See also Lutz, supra* (same); *Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 215 (S.D. Ohio 2011) (denying request for telephone numbers because plaintiff "failed to justify" request).

Here, Plaintiff asked for potential collective members' last known addresses, telephone numbers, and email addresses. (Motion, p. 11). However, Plaintiff has not demonstrated that the initial mailing will be insufficient to provide *reasonable* notice of this action (which is all that is required), and has not justified why a potential collective member's telephone number and email address should be handed over to an attorney the individual has never met. Besides, as discussed above, Defendants do not maintain any sort of database containing this information. Accordingly, the Court should deny Plaintiff's request for all potential collective members' telephone numbers and email address.

> **4. Defendants Should Not Be Required To Post Notice At Strip Steakhouse.**

Although Plaintiff requests that notice be posted at Strip Steakhouse, she has not provided any justification for why the notice should be posted. In the absence of such a showing,

Defendants should not be required to post the notice at Strip Steakhouse. *See, e.g., Fenley*, 170 F. Supp. 3d at 1075 (S.D. Ohio 2016) (holding that even though the defendant did not object to posting notice in its workplace, defendant was not required to post the notice because "Plaintiff has not offered any evidence to suggest that electronic and ordinary mail would be insufficient to notify all putative class members of their right to opt-in to the instant litigation"); *Lutz*, 2013 U.S. Dist. LEXIS 56477 at *22 (denying request to post notice of lawsuit because plaintiff did not demonstrate "why, for notice purposes, it is necessary for the notices to be posted in the workplace"). Posting of the notice is also unnecessary, as each current employee who is a member of the proposed collective (the only collective members who would even see the posting) will receive a hard-copy of the notice in the mail. *See Shajan v. Barolo, Ltd.*, 2010 U.S. Dist. LEXIS 54581, at *5 (S.D.N.Y. June 2, 2010) ("Since all current employees will be receiving the notice, there is no need to require defendants to post the notice in the workplace.")

Furthermore, requiring Defendants to post such notice would violate Defendants' First Amendment rights. *See Citizens United v. FEC*, 558 U.S. 310, 312 (2010) ("The Court has recognized that the First Amendment applies to corporations."). Indeed, the Constitution protects against compulsion to disseminate a message with which one disagrees. *See, e.g., Pac. Gas & Elec. Co. v. Pub. Util. Comm'n*, 475 U.S. 1, 15 (1986) (requiring a litigant to include its adversary's views in its billing "impermissibly requires [the litigant] to associate with speech with which [the litigant] may disagree"). Even if Defendants' right not to disseminate speech with which it disagrees is not absolute, Supreme Court precedent requires that any order burdening the exercise of free speech must be narrowly tailored to serve a compelling state interest. *Pac. Gas & Elec. Co. v. Pub. Util. Comm'n*, 475 U.S. 1, 19 (1986). The posting of the

14

proposed notice is certainly not narrowly tailored because it would be broadcast to many more individuals than is necessary (*i.e.*, individuals who are not part of the proposed collective).

> E. **The Potential Collective Should Only Include Individuals Employed by Defendants Within Three Years Prior to an Order of Certification.**

Finally, the collective in this case should only include individuals who worked for Strip Steakhouse in the three years prior to an order of certification, not October 5, 2014, as Plaintiff requests. Under 29 U.S.C. § 256(b), the statute of limitations period continues to run against each potential collective member in an FLSA collective action until he or she formally elects to join the action by filing written consent to join. Therefore, the ***earliest*** an opt-in plaintiff can join this action is three years prior to the date a collective is certified. Accordingly, in the event that this Court certifies a collective in this case, that collective should only include those individuals who fall within the collective definition in the three years prior to certification of the collective.

### IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's Motion to Conditionally Certify an FLSA Collective Action and Authorize Notice.

Respectfully submitted,

*/s/ James P. Smith*
Timothy S. Anderson (0071593)
James P. Smith (0073945)
Jeffrey J. Moyle (0084854)
LITTLER MENDELSON, P.C.
1100 Superior Avenue, 20th Floor
Cleveland, OH 44114
Telephone: 216.696.7600
Facsimile: 216.696.2038
tanderson@littler.com
jpsmith@littler.com
jmoyle@littler.com

Attorneys for Defendants

## CERTIFICATE OF SERVICE

    I hereby certify that on November 9, 2017, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ James P. Smith*
James P. Smith
One of the Attorneys for Defendants

Firmwide:151056317.1 095659.1000